# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re D.C. and B.C.**

**No. 19-0496** (Mason County 18-JA-24 and 18-JA-25)

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.C., by counsel Tanya Hunt Handley, appeals the Circuit Court of Mason County's April 8, 2019, order terminating her parental rights to D.C. and B.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, R. Michael Shaw Jr., filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition against petitioner alleging her child was born suffering from neonatal withdrawal symptoms due to her knowing and illegal drug use while pregnant. Specifically, the child was born with methamphetamine, morphine, and marijuana in her system. Additionally, petitioner admitted to hospital staff that she abused heroin daily. Further, the DHHR alleged that petitioner used heroin as recently as June 15, 2018, had no permanent home, had two prior child abuse and neglect proceedings involving her older child, and that her older child was also born drug-exposed.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

After petitioner waived her right to a preliminary hearing, she then stipulated to the allegations in the petition at the adjudicatory hearing in August of 2018. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent.

In September of 2018, the circuit court accepted the DHHR's case plan, granted petitioner a post-adjudicatory improvement period, and set forth the terms of her post-adjudicatory improvement period requiring her to participate in individualized parenting sessions, adult life skills sessions, random drug screens, inpatient rehabilitation, and supervised visitations with the children. Thereafter, petitioner failed to regularly drug screen, stay in contact with the DHHR service provider, seek inpatient rehabilitation, or attend several status hearings. The DHHR alleged that petitioner exercised one visit with the children, but the visit was terminated early because she appeared to be under the influence of drugs. On November 26, 2018, the circuit court held a review hearing wherein the DHHR advised that petitioner was "not doing well" and that it intended to file a motion to revoke her improvement period.

In December of 2018, the DHHR filed a motion to terminate petitioner's improvement period as well as a motion to terminate her parental rights. In its motion to revoke petitioner's improvement period, the DHHR alleged that petitioner failed to visit with her children since September of 2018, submit to drug screens, follow through with inpatient rehabilitation, or keep in contact with the DHHR and its service providers. In its motion to terminate petitioner's parental rights, the DHHR alleged that she failed to comply with the terms of her improvement period and had not made any significant changes to her behavior in order to ensure the safety of the infant children. At a hearing in January of 2019, petitioner moved to continue the portion of the hearing concerning her improvement period arguing that she needed more time to "work with services." The circuit court continued the hearing to February 4, 2019, wherein the DHHR requested a continuance citing the need to hold another multidisciplinary team ("MDT") meeting "to discuss options prior to the next hearing." According to the DHHR, petitioner was to report to a rehabilitation center the same day. Thereafter, an MDT meeting was held and petitioner failed to appear. The team members had no knowledge of petitioner's whereabouts or whether she reported to inpatient rehabilitation. On February 28, 2019, the circuit court held a hearing wherein petitioner's counsel moved to continue the portion of the hearing concerning petitioner's improvement period arguing that counsel needed time to determine the status of petitioner's rehabilitation. The circuit court granted the continuance.

In March of 2019, the circuit court held a hearing upon the State's motion to terminate petitioner's post-adjudicatory improvement period and motion to terminate petitioner's parental rights. Petitioner failed to appear for the hearing, but was represented by counsel. To argue for termination, the DHHR relied upon prior testimony that petitioner had (1) only visited the children once and was under the influence of drugs at the visit, (2) not regularly drug tested, (3) not completed inpatient rehabilitation, and (4) not complied with any other terms and conditions of her improvement period. Ultimately, the circuit court found that petitioner did not substantially comply with the terms of her improvement period and revoked it. Moreover, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination of parental rights was necessary for the welfare of the

children. Accordingly, the circuit court terminated petitioner's parental rights in its April 8, 2019, order. It is from this order petitioner now appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's overarching argument is that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) (2019).[3] In support, she first argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected "when it was expressed on multiple occasions that she was attempting to get into an inpatient rehabilitation center."

According to West Virginia Code § 49-4-604(c)(3), a situation in which there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes one in which the parent has

not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as

---

[2]The father of D.C. is deceased and the father of B.C. had his parental rights terminated. According to the parties, the permanency plan for the children is adoption in their current foster placement.

[3]Pursuant to West Virginia Code § 49-4-604(b)(5),

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Shortly after petitioner was granted a post-adjudicatory improvement period and signed her case plan, she failed to regularly drug screen, stay in contact with her DHHR service provider, seek inpatient rehabilitation, or regularly attend hearings. Petitioner appeared under the influence of drugs at her only visit with the children. The record further establishes that petitioner's complete noncompliance continued until the dispositional hearing. The overwhelming evidence before the circuit court was that petitioner failed to successfully complete any aspect of her improvement period and failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of her children. Although petitioner argues that she expressed on multiple occasions that she was attempting to get into an inpatient rehabilitation program, the record provides otherwise. Instead, the evidence is that petitioner made one attempt to enroll into inpatient rehabilitation as discussed at the February 24, 2018, hearing. Immediately thereafter, petitioner failed to stay in contact with her DHHR caseworker or her counsel. The circuit court then granted several continuances of petitioner's dispositional hearing to allow the DHHR and petitioner's counsel to locate her and determine the status of her admission to rehabilitation. At no point was evidence provided to the circuit court that petitioner had, in fact, enrolled in or participated in drug treatment, and petitioner never explained why she failed to enroll. Given the evidence of petitioner's complete lack of meaningful participation in the underlying proceedings and her chronic history of illegal substance abuse, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination of her parental rights was necessary for the children's welfare.

Second, petitioner argues that the children's placement with family warranted imposition of a less-restrictive dispositional alternative such as termination of her custodial rights. We disagree.

We reiterate our holding that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given this Court's findings above, we find that the circuit court did not err in terminating petitioner's parental rights without imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2019, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  January 17, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison